UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE ESTATE OF TAMMY PEREZ,<br>  by its Administrator,<br>  SHERYL PEREZ,<br><br>    Plaintiff,<br><br>v.<br><br>MORGAN COUNTY SHERIFF,<br>ADVANCED CORRECTIONAL<br>  HEALTHCARE INC.,<br>ANITA BURNAM,<br>RACHEL MUNDAY,<br>CHRISTINA ANDERSON,<br>BOBBIE ANTHIS,<br>MALLORY SCHWAB,<br>ERIC MULLIKIN,<br>VIENNA MARTIN,<br>JARED SMITH,<br>KRIS DARLING,<br>ROBERT ANDREWS, and,<br>DR. MICHAEL SILBERT,<br>    Defendants. | Cause No. 1:16-cv-645<br><br><br><br><br><br><br><br><br><br>Jury Trial Requested |

**COMPLAINT**

**I. Nature of Case**

1. This lawsuit seeks money damages against the Morgan County Sheriff, the Sheriff's medical provider, and employees of both entities, for the unnecessary and wrongful death of thirty-four year-old Tammy Perez in the Morgan County Jail on October 1, 2015.

**II. Jurisdiction and Venue**

2. This action is brought pursuant to 42 U.S.C. §1983 and is premised on the Eighth Amendment to the United States Constitution. This Court has original subject matter jurisdiction of the federal questions presented, pursuant to 28 U.S.C. §1331.

3. Venue is proper in this Court, pursuant to 28 U.S.C. §1391, because the events giving rise to this action occurred in, and the defendants are residents of or do business in, Morgan County, Indiana, which is located in the Southern District of Indiana.

4. This Court has supplemental jurisdiction over plaintiff's state law claims against Advanced Correctional Health Care and its employees pursuant to 28 U.S.C. §1367.

### III.  Parties

5. Plaintiff the Estate of Tammy Perez is the duly constituted estate of the deceased Tammy Perez, administered by Sheryl Perez.

6. Defendant Morgan County Sheriff is a law enforcement agency with its offices in Morgan County, Indiana and a political subdivision of the state of Indiana. This entity is sued on plaintiff's federal and state claims.

7. Defendant Advanced Correctional Healthcare Inc. ("ACH") is an Illinois corporation doing business in Indiana, and was, at the time of the events giving rise to plaintiff's claims, providing medical care to inmates at the Morgan County Jail. This defendant is sued on plaintiff's federal and state claims.

8. Defendant Anita Burnam is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a Morgan County Jail nurse responsible for the health care of inmates at the Morgan County Jail. This defendant is sued only on plaintiff's federal claims.

9. Defendant Rachel Munday is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a Morgan County Jail nurse responsible for the health care of inmates at the Morgan County Jail. This defendant is sued only on plaintiff's federal

claims.

10. Defendant Christina Anderson is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a Morgan County Jail medical officer and as such was responsible for the health care of inmates at the Morgan County Jail. This defendant is sued only on plaintiff's federal law claims.

11. Defendant Bobbie Anthis is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a jail officer at the Morgan County Jail. This defendant is sued only on plaintiff's federal law claims.

12. Defendant Mallory Schwab is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a jail officer at the Morgan County Jail. This defendant is sued only on plaintiff's federal law claims.

13. Defendant Eric Mullikin is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a jail officer at the Morgan County Jail. This defendant is sued only on plaintiff's federal law claims.

14. Defendant Vienna Martin is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a jail officer at the Morgan County Jail. This defendant is sued only on plaintiff's federal law claims.

15. Defendant Jared Smith is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a jail officer at the Morgan County Jail. This defendant is sued only on plaintiff's federal law claims.

16. Defendant Kris Darling is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a jail officer at the Morgan County Jail. This defendant is

     sued only on plaintiff's federal law claims.

17. Defendant Robert Andrews is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a jail officer at the Morgan County Jail. This defendant is sued only on plaintiff's federal law claims.

18. Defendant Dr. Michael Silbert is an adult resident of Indiana and was, at the time of the events giving rise to plaintiff's claims, a Morgan County Jail doctor responsible for the health care of inmates at the Morgan County Jail. This defendant is sued only on plaintiff's federal claims.

### IV. Facts

19. Tammy Perez was 34 years old and an inmate at the Morgan County Jail from September 28, 2015, to October 1, 2015.

20. On September 28, 2015, a Morgan County Judge sentenced Ms. Perez to 40 days in jail with an option to complete the sentence in drug rehabilitation, if available.

21. Ms. Perez, who struggled with heroin addiction, was booked into the jail on September 28, 2015, with heroin in her system.

22. The defendants were aware of Ms. Perez's addiction, that she had heroin in her system upon being booked-into the jail, and that she would experience withdrawal from heroin during her incarceration.

23. The defendants also were aware that Ms. Perez suffered from an adrenal gland disorder which prevented her adrenal glands from functioning.

24. Ms. Perez needed a daily dose of dexamethasone, a medication to take the place of her non-functioning adrenal glands.

25. Ms. Perez alerted the jail intake officer that she was currently taking dexamethasone and that she needed special care with respect to this medication.

26. On September 28, 2015, the day Tammy Perez was taken to jail, Sheryl Perez personally brought her daughter's medication to the jail and asked to meet with the jail's nurse.

27. Defendants Jail Nurse Anita Burnham and Jail Medical Officer Christina Anderson met with Sheryl Perez and accepted three medications from her for Tammy.

28. Sheryl Perez emphasized to Nurse Burnham and Officer Anderson the importance that Tammy not miss any dosages of dexamethasone. She told this to them twice, and they both acknowledged her instructions.

29. Ms. Perez had been on medication since her birth for her non-functioning adrenal glands and it was vital to her health that she have this medication daily.

30. During the four days Ms. Perez was in jail prior to her death, she went through intensive and debilitating drug withdrawal.

31. Symptoms of Ms. Perez's withdrawal included extreme nausea, diarrhea, and dehydration.

32. Ms. Perez was not able to hold down food, water, or oral medication.

33. The withdrawal symptoms of vomiting and diarrhea prevented any medication Ms. Perez was taking orally, including the dexamethasone, from getting into her system.

34. Ms. Perez was provided oral medication to combat nausea, but she was unable to keep this in her system.

35. During this time, Ms. Perez became incoherent and critically ill.

36. During this time, Ms. Perez lost control of her normally voluntary bodily functions and repeatedly soiled herself and her clothing with her own vomit and feces.

37. Ms. Perez's symptoms were so bad that she not only soiled herself and her clothes, but also the cell area she shared with other inmates.

38. Ms. Perez and her cellmates reported to the defendant jail medical staff and correctional officers numerous times that Ms. Perez was vomiting in her cell, had horrible and continual diarrhea, and that she was not able to keep any food, water, or medicine in her system.

39. On at least two occasions, jail officers, including Defendants Mullins, Smith, Darling, and Schwab, removed Ms. Perez from her cell, took her to the shower so she could wash the vomit and feces off of her, and returned her to the cell.

40. These measures only worked temporarily, as Ms. Perez's nausea and diarrhea were so bad that she quickly soiled her jail clothing.

41. Defendant correctional officers, including Anthis and Smith, told Ms. Perez that they were not going to take her to the shower again and left her in her cell for hours in jail clothing drenched in her own vomit and feces.

42. Ms. Perez became dehydrated and her eyes became visibly sunken back into her skull.

43. Ms. Perez and her cellmates reported to these defendant jail medical and correctional staff numerous times that Ms. Perez needed to go to the hospital because her condition was deteriorating and she was not able to keep any food, water, or medicine in her system.

44. Ms. Perez repeatedly banged on the cell door begging to go to the hospital, but was ignored.

45. In response to Ms. Perez's pleas, Correctional Officer Anthis told Ms. Perez to "stop being a drama queen."

46. Ms. Perez was so visibly ill that the other inmates summoned these defendant correctional and nursing staff to help her and to provide her medical care.

47. At no time did correctional officers obtain appropriate medical help for Ms. Perez.

48. In response to Ms. Perez's cell mates' pleas, Defendant jail nurse Munday told them that she had contacted the jail doctor, who had prescribed oral doses of Phenergan to combat Ms. Perez' nausea.

49. Ms. Perez's cell mates told Nurse Munday that this was not working, as Ms. Perez was vomiting her medications as soon as she took them.

50. On September 29, 2015, Nurse Burnam examined Ms. Perez and documented that Ms. Perez had diarrhea, her skin was clammy, that she had drive heaves, and that she was producing yellow stomach bile when she was vomiting.

51. On September 30, 2015, Ms. Perez told Nurse Munday that she was dehydrated and was still vomiting.

52. Despite persistent pleas from Ms. Perez and her cell-mates for Ms. Perez to be taken to a hospital, the jail staff, including these defendants, failed to provide any emergency care to Ms. Perez.

53. Finally, because Ms. Perez's diarrhea and vomiting was so bad and ongoing, defendant correctional officers Schwab, Smith, Mullikin, and Andrews removed Ms. Perez from the cell she shared with other inmates, placed her in a separate individual holding cell, and later moved her to another single cell.

54. Because of her fragile medical condition, Ms. Perez should have been taken to the hospital for emergency medical care.

55. Because of her fragile medical condition, Ms. Perez should have been on IV fluids and had her required medications delivered intravenously .

56. Because of her fragile medical condition, Ms. Perez should have been constantly monitored.

57. Rather than providing her the emergency medical care she needed, in the late evening hours of September 30, 2015, these defendants placed Ms. Perez in a single cell and failed to adequately monitor her.

58. Correctional officers later reported that Defendant Dr. Silbert had authorized the treatment of Ms. Perez and her placement in a single holding cell.

59. Dr. Silbert should have instructed the correctional staff to transfer Ms. Perez to a hospital for immediate emergency care.

60. In the early morning hours of October 1, 2015, Martinsville police officer Gary Rohland brought an arrestee to the jail.

61. Officer Rohland noticed Ms. Perez's name on a whiteboard in a receiving room single cell.

62. Officer Rohland personally knew Ms. Perez and decided to check on her by sliding open the cover of the cell's door and look in on her.

63. Officer Rohland observed that Ms. Perez was not moving or breathing.

64. Officer Rohland summoned jail officers, including Officer Defendant Smith, who opened Ms. Perez's cell door.

65. Responding correctional officers found Ms. Perez cold to the touch and dead.

66. When first responding medical personnel arrived, they documented that Ms. Perez was cold to the touch and that rigor mortis had already begun to set in, meaning that she had been dead for an extended period of time.

67. Morgan County Jail staff, including these defendants, failed to adequately monitor Ms. Perez.

68. Morgan County officials contracted with Advanced Correctional Healthcare to provide

medical care to inmates.

69. Inmates at the Morgan County Jail have endured unnecessary pain and suffering as a result of consistently substandard medical care provided there to the inmates.

70. There have been other Morgan County jail inmates die as a result of the consistently substandard medical care provided there to the inmates.

71. ACH did not deliver care that met the standard of care to Ms. Perez.

72. As Ms. Perez's health continued to deteriorate, the physical stress caused by her condition, including the lack of medication and hydration, contributed to the development of a heart arrhythmia, resulting in death.

73. Had Ms. Perez been provided adequate care, her death would have been prevented.

74. Ms. Perez's pain, suffering and death was caused by the policies and practices of the Morgan County Sheriff and ACH to deliver substandard medical and correctional care to prisoners in the Morgan County Jail.

75. Tammy Perez died in the care and custody of the Morgan County Sheriff and ACH from a foreseeable cause given her adrenal gland disorder, the symptoms of extreme withdrawal and illness she exhibited, and the lack of adequate administration of her medications.

76. The actions and inactions of the individual defendants were taken within the scope of their employment.

77. The actions and inactions of the individual defendants were taken under color of state law.

### V. Claims

78. The actions and inactions of the defendants were deliberately indifferent to the reasonable medical needs of Tammy Perez and thus in violation of the Eighth Amendment to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

79. Defendant ACH's actions and inactions constituted negligence and resulted in the wrongful death of Tammy Perez, actionable under Indiana's general wrongful death statute, Indiana Code 34-23-1-1.

80. Plaintiff reserves the right to proceed with any and all claims which the facts averred in this Complaint support, pursuant to the notice pleading requirement of Federal Rule of Civil Procedure 8.

## VI.  Jury Trial Requested

81. Plaintiff requests a jury trial on its claims.

## VIII.  Relief Requested

82. Plaintiff seeks all relief available under the law, including compensatory damages and punitive damages, attorney fees and costs, and all other appropriate relief.

Respectfully submitted,

Dated: March 22, 2016

/s/ *Richard A. Waples*
Richard A. Waples
Attorney for Plaintiff

**WAPLES & HANGER**
410 N. Audubon Road
Indianapolis, Indiana 46219
TEL: (317) 357-0903
FAX: (317) 357-0275
EMAIL: rwaples@wapleshanger.com